Buco Building Constructors, Inc. ("Buco"), appeals from a summary judgment that the Jefferson Circuit Court, Bessemer Division, entered in favor of Mayer Electric Supply Company, Inc. ("Mayer"). Because the record does not reflect that Buco has standing to appeal, we dismiss.
Mt. Pilgrim Missionary Baptist Church ("the church") hired Buco to serve as general contractor in the construction of a family life center for the church ("the project"). Buco contracted with J J Electric Company, Inc. ("J J"), to perform electrical work on the project. J J used Mayer as a supplier on the project.
On June 14, 2004, Mayer served Buco and the church with a notice of intent to claim a materialman's lien. Mayer stated in the notice that it was owed $36,217.82 for materials supplied for the project. On August 6, 2004, Mayer filed a "Verified Statement of Lien" against the church's property in the Jefferson County Probate Court.
On August 24, 2004, Mayer sued J J, alleging nonpayment of goods that Mayer had supplied to J J related to the project. Mayer also named J J's president, Jerry Davis, Jr., as a defendant, alleging that he had guaranteed this debt. In addition, Mayer named Buco and the church as defendants. As to J J and Davis, Mayer sought money damages; as to the church, *Page 709 
Mayer sought an order perfecting its lien on the church's property and ordering the sale of that property for the payment of the lien. On October 8, 2004, Buco filed a motion to dismiss in which it argued that Mayer had failed to state a claim against it. The trial court denied the motion.
On October 22, 2004, J J answered the complaint and asserted a cross-claim against Buco for breach of contract, alleging that Buco still owed it $102,009.19 for work performed on the project. J J later filed a cross-claim against the church, asserting a lien on the church's property for the unpaid balance it claimed Buco owed it. Buco eventually filed a cross-claim against J J, in which it asserted that it incurred costs in the amount of $100,828 due to J J's breach of contract.
On November 22, 2004, based on its contract with J J, Buco moved the trial court to stay the proceedings and to compel arbitration. On December 7, 2004, Mayer filed a response to Buco's motion to compel arbitration in which Mayer argued that it could not be forced to arbitrate its claims because it did not have a contractual relationship with Buco.
On December 17, 2004, Buco executed a "Release of Lien Bond" that provided:
 "KNOW ALL MEN BY THESE PRESENT: That we, Buco Building Constructors, Inc. as Principal, and St. Paul Fire and Marine Insurance Company, a corporation organized under the laws of the State of MN, and authorized to transact Surety Business in the State of AL as Surety, a2-e held and firmly bound unto Mayer Electric Supply Company, Inc. as Obligee in the sum of Thirty Six Thousand Two Hundred Seventeen Dollars and 82/100 ($36,217.82) lawful money of the United States of America, for the payment of which, well and truly to be made, we bind ourselves, our heirs, legal representatives, successors and assigns, jointly and severally firmly by these presents.
 "WHEREAS, The Principal entered into a contract with Mt. Pilgrim Baptist Church of Fairfield, Alabama
 "WHEREAS, Mayer Electric Supply Company, Inc. has filed a notice of Claim of Lien in Jefferson County, AL, in the Amount of Thirty Six Thousand Two Hundred Seventeen Dollars and 82/100 ($36,217.82) for materials furnished for Mt. Pilgrim Family Life Center, Grasselli Road, Fairfield, AL, Jefferson County, AL
 "AND WHEREAS, The Principal desired to obtain the release of the aforementioned lien and has requested the Obligee to accept an indemnity bond conditioned as set forth in lieu thereof. "NOW, THEREFORE, the condition of this obligation is such, that if the said Buco Building Constructors, Inc. shall pay any judgment that may be rendered against it by any court of competent jurisdiction, in regards to said lien, then this obligation to be void, otherwise to remain in full force and effect."
Although, as noted, the bond provided that Buco had requested that Mayer accept an indemnity bond in lieu of Mayer's lien on the church's property, there is no indication in the record that Mayer did so.
On December 21, 2004, Buco renewed its motion to dismiss, arguing that "Mayer failed to state any cause of action against Buco in its complaint" and that, because, when it objected to Buco's motion to compel arbitration, Mayer admitted that there was not a contractual relationship between Buco and Mayer, "there remain[ed] no basis for Mayer's claims against Buco."
On December 22, 2004, Mayer filed a motion for a summary judgment against J J and Davis. On May 22, 2005, after a hearing on the motion, the trial court *Page 710 
granted the motion and entered a summary judgment in Mayer's favor. In the judgment, the trial court: (1) awarded Mayer a money judgment against J J and Davis in the amount of $36,217.82, plus interest in the amount of $5,661.75, and an attorney's fee of $1,645.50; (2) ordered that Mayer's lien against the church's property be perfected; and (3) ordered the circuit clerk to sell the church's property for the payment of the lien. The trial court certified its judgment as final pursuant to Rule 54(b), Ala. R. Civ. P.
On June 8, 2005, Buco filed a motion to alter, amend, or vacate the judgment. Buco argued that the trial court's judgment improperly awarded more relief to Mayer than Mayer had sought in its motion for a summary judgment. Buco also argued that the sale of the church's property for the satisfaction of Mayer's lien before resolution of Buco's and J J's cross-claims against each other would deprive Buco and the church of their due-process rights. The trial court denied Buco's motion. Buco appeals.
Although neither party formally raises the issue of jurisdiction, this court is obligated to consider its jurisdiction and to notice the lack thereof ex mero motu.See Goodyear Tire Rubber Co. v. Moore,900 So.2d 1239, 1240 (Ala.Civ.App. 2004). "`Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.' National Org. for Women, Inc. v.Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99
(1994). `"[L]ack of standing [is] a jurisdictional defect."'State v. Property at 2018 Rainbow Drive,740 So.2d 1025, 1028 (Ala. 1999) (quoting Tyler House Apartments, Ltd.v. United States, 38 Fed.Cl. 1, 7 (Fed.Cl.1997))." Exparte Fort James Operating Co., 871 So.2d 51, 54
(Ala. 2003).
In the present case, Buco contends that its interests are adversely affected by that aspect of the judgment ordering the sale of the church's property. In its appellate brief, Buco asserts:
 "[The] purported perfection or establishment of a lien on the [church's] property and the sale of the property clearly will have an effect on the rights of [the church] and Buco, even though no remedy against [the church] or Buco was requested in the motion for summary judgment. . . . [The church], as owner of the property will have an obvious detriment, and Buco, which executed a release of lien [bond] . . . will in turn be required to pay the amount of the lien."
Although, as noted, the record indicates that a representative of Buco signed a document entitled "Release of Lien Bond," the record does not demonstrate that this bond was effectively substituted as security for the satisfaction of Mayer's claims in place of Mayer's lien on the church's property.
Alabama Code 1975, § 35-11-233(b), sets forth the manner by which a bond may be substituted for a lien as collateral for the payment of a debt owed to, among other things, an unpaid supplier of materials to a construction project. That statute provides, in relevant part:
 "(b) Any lien claimed on real property under this division may be transferred by any person having an interest in the real property upon which the lien is imposed or the contract under which the lien is claimed, from such real property to other security by first filing with the court in which the action is brought, a copy of the lien which has been duly filed and recorded as required by law, and by either:
 "(1) Depositing with the court in which the action is brought a sum of money; or *Page 711 
 "(2) Filing with the court a bond executed as surety by a surety insurer licensed to do business in this state, either of which shall be in an amount equal to the amount demanded in suck claim of lien plus interest thereon at eight percent per year for three years plus $100.00 to apply on any court, costs which may be taxed in any proceeding to enforce said lien.
 "Such deposit or bond shall be conditioned to pay any judgment or decree which may be rendered for the satisfaction of the lien for which such claim of lien was recorded and costs not to exceed $100.00. Upon making such deposit or filing suck bond the court shall make and record, a certificate showing the transfer of the lien from the real property to the security and mail a copy thereof by registered or certified mail to the lienor named in the claim of lien so transferred at the address stated therein. Within 10 days from the date of the receipt of the said certificate, the lienor may by motion, petition the court in which the action is pending for a hearing on the sufficiency of the amount in question or on the qualifications of the surety insurer. In such an event, the ruling of the court on the said motion, shall be a final determination. Upon the expiration of the said 10 days, or in the event a petition has been filed with the court, upon the determination of the court, and upon filing the certificate of transfer in the court where the lien was filed, the real property shall thereupon be released from the lien claimed and such lien shall be transferred to said security. The court shall be entitled to a fee for making and serving the certificate in the sum of $2.00. Any number of liens may be transferred to one such security."
(Emphasis added.)
In the present case, the only document in the record indicating an attempt by Buco to substitute its promise to pay Mayer's claim for the lien on the church's property is the "Release of Lien Bond" that it executed. There is no indication in the record that the bond was filed with the court, as required by § 35-11-233, or that the court issued a "certificate showing the transfer of the lien from the real property." As a result, the record does not indicate that Buco's "Release of Lien Bond" was effective to lift Mayer's lien on the church's property, nor does it indicate that Buco's promise to pay Mayer's claim in lieu of the lien ever became effective.
We note further that, although Mayer had no contract with Buco and had not made any claim against Buco, the bond itself only obligated Buco to indemnify Mayer in the event of an unpaid monetary judgment in Mayer's favor against Buco.
Section 35-11-233(b) requires that a bond thereunder "be conditioned to pay any judgment or decree which may be rendered for the satisfaction of the lien." (Emphasis added.)[1]
Given the foregoing, the record does not support Buco's argument to this court that, because of the judgment in Mayer's favor, Buco's execution of the "Release of Lien Bond" requires Buco "to pay the amount of the lien." We fail to see, therefore, how Buco was aggrieved by the trial court's judgment in Mayer's favor, which was directed at a lien on property owned by the church, not Buco. A party that is not aggrieved by a trial court's *Page 712 
judgment cannot appeal from that judgment. See Sho-Me MotorLodges, Inc. v. Jehle-Slauson Constr. Co., 466 So.2d 83, 88
(Ala. 1985); S.W.M. v. D.W.M., 723 So.2d 1271, 1272
(Ala.Civ.App. 1998); and Rush v. Heflin, 411 So.2d 1295,1297 (Ala.Civ.App. 1982).
Because the record does not reflect that Buco was aggrieved by the trial court's summary judgment in favor of Mayer, it was without standing to appeal that judgment. See Housing Auth.of Uniontown v. Mizell, 368 So.2d 37, 38-39 (Ala.Civ.App. 1979). Buco's lack of standing deprives this court of jurisdiction over the appeal. See Ex parte Fort JamesOperating Co., 871 So.2d 51, 54 (Ala. 2003). Consequently, the appeal must be dismissed.
Mayer's motion seeking damages on the basis that this is a frivolous appeal is denied.
APPEAL DISMISSED.
CRAWLEY, P.J., and THOMPSON, PITTMAN, and BRYAN, JJ, concur.
[1] We also note that Buco does not appear to qualify as a person with an "interest in the real property upon which the lien is imposed" or an interest in the contract between Mayer and J J under which Mayer claimed the lien and that the bond fails to obligate Buco to pay the interest and costs required by § 35-11-233(d).